UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FEDERATED MUTUAL INSURANCE COMPANY, <br><br>  Plaintiffs, <br><br> v. <br><br> GREEN LEAF, INC. and BANJO CORPORATION, <br><br>  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. |

_____

**FEDERATED MUTUAL INSURANCE COMPANY'S COMPLAINT**

Plaintiff Federated Mutual Insurance Company ("Federated"), for its complaint against Defendants Green Leaf, Inc. ("Green Leaf") and Banjo Corporation ("Banjo"), states as follows:

**INTRODUCTION**

1. This is an action pursuant to 28 U.S.C. § 2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure to determine and resolve questions of actual controversy about the scope of insurance coverage, if any, under policies of insurance issued by Federated to Green Leaf.

2. Green Leaf tendered to Federated a lawsuit that Banjo filed against Green Leaf for damages related to Green Leaf's alleged trademark/trade dress infringement and unfair competition. The lawsuit is captioned *Banjo Corporation v Green Leaf, Inc.*, Case No. 1:230-cv-001770-SEB-MG, United States District Court Southern District of Indiana, Indianapolis Division (the "Banjo Lawsuit").

1

3. Green Leaf tendered the Banjo Lawsuit to Federated for defense and indemnity under insurance policies issued to Green Leaf by Federated.

4. Federated has been defending Green Leaf in the Banjo Lawsuit under the Federated Primary Policies, subject to a full and complete reservation of rights.

5. Federated requests that this Court declare the rights and duties of Federated and Green Leaf under the Federated Primary Policies and Federated Umbrella Policies (as defined herein) with respect to insurance coverage for the Banjo Lawsuit and any related claims that may be made arising from or relating to the alleged trademark infringement and unfair competition by Green Leaf, as more fully set forth below.  Banjo, as plaintiff in the Banjo Lawsuit, is seeking monetary relief from Green Leaf (in the Banjo Lawsuit), and therefore is an interested party in the outcome of this action.  Federated seeks to bind Banjo to the outcome of this action but otherwise does not seek any relief from Banjo.

## THE PARTIES

6. Federated is a mutual insurance company incorporated under the laws of Minnesota with its principal place of business in Owatonna, Minnesota.

7. Green Leaf, Inc. is an Indiana corporation with its principal place of business located at 9490 N. Baldwin Street, Fontanet, Indiana 47851.

8. Banjo Corporation is an Indiana corporation with its principal place of business at 150 Banjo Drive, Crawfordsville, Indiana 47933.

## JURISDICTION AND VENUE

9. Pursuant to 28 U.S.C. § 1332 *et seq.*, this Court has original jurisdiction over this action because the controversy is between citizens of different states and exceeds the minimum jurisdictional amount of $75,000, exclusive of interest and costs.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b) because the Defendants have their principal places of business in this district and because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## THE BANJO LAWSUIT

11. On September 29, 2023, Banjo filed a lawsuit against Green Leaf alleging: Count I: Trademark/Trade Dress Infringement Under 15 U.S.C. § 1114(1); Count II: Unfair Competition, False Designations of Origin And False Advertising Under 15 U.S.C. § 1225(a); and Count III: Common Law Unfair Competition And Trademark Infringement. (Banjo Complaint attached as **Exhibit A**.)

12. The Banjo Lawsuit alleges that Banjo has used, since as early as 1994, distinctive, yellow-colored handles on its valves it manufactures, which are used for regulating the flow of liquids in hoses and pipes.

13. The Banjo Lawsuit alleges that Banjo's yellow-handled valves have come to be recognized as identifying Banjo as the source of the products.

14. The Banjo Lawsuit alleges that on December 28, 2021, the United States Patent and Trademark Office issued to Banjo Trademark Registration No. 6,600,065, for its Yellow Handle Design® for "liquid handling products for commercial, industrial and agricultural use, namely, control valves for regulating the flow of liquids in hoses and pipes."

15. The Banjo Lawsuit alleges that Green Leaf has been in business since 1983 and, until recently, sold a line of control valves bearing distinctive green colored handles.

16. The Banjo Lawsuit alleges Green Leaf began selling imitation yellow-handled valves after hiring two Banjo employees.

17. The Banjo Lawsuit alleges that in or about 2019 Green Leaf launched a new division under the assumed name TerreMax to sell control valves in competition with Banjo that exclusively bear yellow handles indistinguishable from Banjo's Yellow Handle Design®.

18. The Banjo Lawsuit alleges that the name TerreMax was adopted in conscious imitation of Bano's original names, Terre Knife and Terre Products, in a deliberate effort to encourage false associations with Banjo.

19. The Banjo Lawsuit alleges that Green Leaf advertises the imitation yellow-handled valves on its TerreMax.us website.

20. The Banjo Lawsuit alleges that Green Leaf directly matches its copied products to the Banjo original valves by copying Banjo's proprietary product numbering system, encouraging product substitution among distributors.

21. The Banjo Lawsuit alleges that Green Leaf's "Part Compatibility Guide" encourages product substitution because it markets its infringing products to the same customer base that purchases Banjo's genuine Yellow Handled products.

22. The Banjo Lawsuit alleges that Green Leaf advertises its products using Banjo's own Yellow Handled valves. For instance, the Banjo Lawsuit alleges that on Facebook, Green Leaf invited customers to "check out our #yellowhandle TerreMax ball valves!" but clicking the link leads to a page for Banjo's genuine Yellow Handle ball valves.

23. The Banjo Lawsuit alleges that Green Leaf has earned substantial revenues and profits as a result of its wrongful conduct, and Banjo also alleges that it suffered damages as a result of Green Leaf's wrongful conduct, including lost sales, a loss of exclusivity and loss of distinctiveness in its Yellow Handle Design®, and loss of control over its reputation and the goodwill represented by its Yellow Handle Design®.

## THE FEDERATED POLICIES

24.     Federated issued the following Commercial Package Policies (the "Federated Primary Policies") to Green Leaf, attached to this Complaint as **Exhibits B-H**:

| Exhibit No. | Policy Year | Policy Number |
|---|---|---|
| Ex. B | June 12, 2017 to June 12, 2018 | 0914848 |
| Ex. C | June 12, 2018 to June 12, 2019 | 0914848 |
| Ex. D | June 12, 2019 to June 12, 2020 | 0914848 |
| Ex. E | June 12, 2020 to June 12, 2021 | 0914848 |
| Ex. F | June 12, 2021 to June 12, 2022 | 0914848 |
| Ex. G | June 12, 2022 to June 12, 2023 | 0914848 |
| Ex. H | June 12, 2023 to June 12, 2024 | 0914848 |

25.     The Federated Primary Policies are attached under the exhibit designations stated above and are incorporated herein in their entirety under Fed. R. Civ. P. 10(c).

26.     Federated also issued the following Commercial Umbrella Liability Policies (referred to as the "Federated Umbrella Policies") to Green Leaf, attached to this Complaint as **Exhibits I-O**:

| Exhibit No. | Policy Year | Policy Number |
|---|---|---|
| Ex. I | June 12, 2017 to June 12, 2018 | 0914851 |
| Ex. J | June 12, 2018 to June 12, 2019 | 0914851 |
| Ex. K | June 12, 2019 to June 12, 2020 | 0914851 |
| Ex. L | June 12, 2020 to June 12, 2021 | 0914851 |
| Ex. M | June 12, 2021 to June 12, 2022 | 0914851 |
| Ex. N | June 12, 2022 to June 12, 2023 | 0914851 |
| Ex. O | June 12, 2023 to June 12, 2024 | 0914851 |

27.     The Federated Umbrella Policies are attached under the exhibit designations stated above and are incorporated herein in their entirety under Fed. R. Civ. P. 10(c).

## COUNT I - FEDERATED PRIMARY POLICIES

28. Federated reasserts and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

29. Green Leaf has requested insurance coverage from Federated for the Banjo Lawsuit under the Federated Primary Policies.

30. Federated has been and continues to defend Green Leaf in the Banjo Lawsuit, subject to a full and complete reservation of rights.

31. To the extent the Banjo Lawsuit does not result in sums that Green Leaf becomes legally obligated to pay as damages because of "personal and advertising injury" that was caused by an offense arising out of Green Leaf's business committed during one of the policy periods of the Federated Primary Policies, the Insuring Agreement in those policies is not satisfied and there is no coverage (defense or indemnification) under those policies for the Banjo Lawsuit.

32. To the extent the Banjo Lawsuit involves "personal and advertising injury" that is caused by or at the direction of Green Leaf with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury," there is no coverage (defense or indemnification) under the Federated Primary Policies for the Banjo Lawsuit.

33. To the extent the Banjo Lawsuit involves "personal and advertising injury" that arises out of an oral or written publication whose first publication took place before the beginning of one or more of the policy periods of the Federated Primary Policies, there is no coverage (defense or indemnification) under those policies for the Banjo Lawsuit.

34. To the extent the Banjo Lawsuit involves "personal and advertising injury" that arises out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights that is not otherwise excepted under this exclusion, there is no coverage (defense or indemnification) under the Federated Primary Policies for the Banjo Lawsuit.

35. To the extent the Banjo Lawsuit results in an order to pay attorneys' fees or expenses against Green Leaf, coverage is not available under the Federated Primary Policies for such fees or expenses.

36. To the extent there is other valid and collectible insurance that covers Green Leaf for the Banjo Lawsuit, the "other insurance" provision in the Federated Primary Policies may apply to limit Federated's insurance obligations for the Lawsuit, in whole or in part.

37. To the extent Federated makes a payment of any benefit to or on behalf of Green Leaf under any of the Federated Primary Policies, Green Leaf is obligated to reimburse Federated up to the Retained Amount for each payment made by Federated, subject to the Policy Period Aggregate as stated in those Policies, under the Retained Amount and Reimbursement Endorsement.

38. To the extent it is determined that the Federated Primary Policies do not provide coverage to Green Leaf for the Banjo Lawsuit, in whole or in part, Federated is entitled to reimbursement of defense fees and costs paid by Federated on behalf of Green Leaf, in whole or in part, to the extent permitted by applicable law.

## COUNT II – FEDERATED UMBRELLA POLICIES

39. Federated reasserts and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

40. Green Leaf also has requested insurance coverage from Federated for the Banjo Lawsuit under the Federated Umbrella Policies

41. To the extent the Banjo Lawsuit does not result in sums that Green Leaf becomes legally obligated to pay as damages that are in excess of the applicable limits of "underlying insurance" because of "personal and advertising injury" that was caused by an offense arising out of Green Leaf's business committed during one of the policy periods of the Federated Umbrella Policies, the Insuring Agreement in those policies is not satisfied and, as a result, there is no coverage (defense or indemnification) under those policies for the Banjo Lawsuit.

42. The Federated Umbrella Policies apply only in excess of the applicable limits of "underlying insurance," and in that event the Federated Umbrella Policies will be subject to the terms and conditions of the "underlying insurance."

43. To the extent that the Federated Primary Policies have not been exhausted by reason of covered losses paid for the Banjo Lawsuit, there is no coverage (defense or indemnification) under the Federated Umbrella Policies for the Banjo Lawsuit.

44. The Federated Umbrella Policies provide, in part, that "[i]f this policy and any other umbrella policy issued by us or any company affiliated with us: 1. applies to the same 'accident', 'allegation' or 'occurrence'; and 2. affords coverage from two or more umbrella policies to any insured or combination of insureds," "the aggregate maximum Limit of

Insurance under all umbrella policies shall not exceed the highest applicable Limit of Insurance under any one umbrella policy."

45. To the extent that two or more Federated Umbrella Policies apply to the same accident, allegation or occurrence and afford coverage to Green Leaf, the aggregate maximum Limit of Insurance under all umbrella policies "shall not exceed the highest applicable Limit of Insurance under any one umbrella policy."

46. The Federated Umbrella Policies are subject to the exclusions contained in the applicable "underlying insurance." To the extent that the exclusions contained within the Federated Primary Policies preclude insurance coverage, there is no coverage (defense or indemnification) under the Federated Umbrella Policies for the Banjo Lawsuit.

47. To the extent that the Lawsuit results in a punitive damages award against the insured, those damages are not covered unless insurable by applicable law and covered by "underlying insurance."

48. The Federated Umbrella Policies provide that coverage under those policies are excess over any other insurance or self insurance which covers any part of the injury or damage, except for insurance written specifically as excess to the Federated Umbrella Policies. To the extent that there is any other available insurance available to Green Leaf for the Lawsuit, the Federated Umbrella Policies are excess of that available insurance.

## REQUESTED RELIEF

WHEREFORE, Federated Mutual Insurance Company prays that this Court enters judgment in its favor as follows:

a. Declaring the rights and obligations of Federated under the Federated Primary Policies for the Banjo Lawsuit.

b. Declaring the rights and obligations of Federated under the Federated Umbrella Policies for the Banjo Lawsuit.

c. For such other relief as this Court may deem proper, including the reimbursement to Federated of any amounts paid on behalf of Green Leaf for the Banjo Lawsuit to the extent obligated under the Primary Policies and/or under applicable law.

Dated: November 25, 2025              Respectfully submitted,

                                      PLUNKETT COONEY, P.C.


                                      */s/ Pamela Paige*
                                      Pamela A. Paige, Attorney No. 16163-49
                                      300 N. Meridian, Suite 1250
                                      Indianapolis, IN 46204
                                      ppaige@plunkettcooney.com
                                      cbrowning@plunkettcooney.com
                                      Tel:  (317) 964-2730
                                      ***Attorneys for Plaintiff***
                                      ***Federated Mutual Insurance Company***